IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SABRINA PARIS TENCLEVE                                                                PLAINTIFF

V.                        Civil No. 2:22-cv-02163-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sabrina Tencleve, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.      Procedural Background

Plaintiff protectively filed her applications for DIB and SSI on October 28, 2019, alleging an onset date ("AOD") of June 10, 2019, due to degenerative disk disease ("DDD") in the cervical spine status post anterior cervical fusion, osteoarthritis of the right shoulder status post bone growth removal and a torn rotator cuff, bilateral carpal tunnel syndrome ("CTS"), and diabetes. (ECF No. 11, pp. 68, 77, 87, 193-205, 229, 244-245).  The Commissioner denied her applications initially and on reconsideration, and an administrative hearing was held on June 8, 2021.  (*Id*. at 38-65).  The Plaintiff was telephonically present for the hearing and represented by counsel.

On her alleged onset date, Plaintiff was 48 years old and possessed a high school education and three years of college. (ECF No. 11, pp. 68, 230). She had past relevant work ("PRW") experience as a medical office manager. (*Id*. at 30, 230, 238-241). Although it did not rise to the level of substantial gainful activity ("SGA"), the Plaintiff continued to work part-time in a medical clinic after her AOD. (*Id*. at 20, 223, 225, 229, 335).

In an unfavorable decision dated September 16, 2021, Administrative Law Judge ("ALJ") Bill Jones concluded that the Plaintiff's DDD of the cervical spine and osteoarthritis of the right shoulder were severe but did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 11, pp. 20-21). Despite her impairments, ALJ Jones determined she retained the residual functional capacity ("RFC") to perform sedentary work with occasional overheard reaching. (*Id*. at 23). Based on the vocational expert's ("VE") testimony that Plaintiff's PRW as an office manager did not require the performance of work-related activities precluded by the Plaintiff's RFC, the ALJ determined she was not disabled. (*Id*. at 31, 60).

On August 9, 2022, the Appeals Council denied Plaintiff's request for review (ECF No. 11, pp. 6-11), and she subsequently filed her Complaint to initiate this action. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 13, 14), and the matter is ripe for resolution. The case has been referred to the undersigned for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must

affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The

fact finder will only consider Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion

Plaintiff has raised five issues on appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ erred at Step Two of the sequential analysis; (3) whether the ALJ properly assessed her subjective complaints; (4) whether the ALJ's RFC determination is supported by substantial evidence; and, (5) whether the vocational expert's ("VE") testimony constituted substantial evidence upon which the ALJ could base a determination of disability. After carefully reviewing the record, the undersigned agrees that the ALJ's RFC determination is not supported by substantial evidence.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing her RFC. *Vossen*, 612 F. 3d at 1016. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

4

As previously mentioned, the ALJ found Plaintiff's DDD of the cervical spine and osteoarthritis in the right shoulder to be severe impairments, but he concluded that her bilateral CTS was not severe because it responded favorably to bilateral carpal tunnel ("CT") release surgery. He then concluded she could perform sedentary work with occasional overhead lifting. This does not, however, account for all the Plaintiff's limitations.

Her shoulder problems began in 2013, well before Plaintiff's June 2019 AOD, with complaints of neck and left arm pain, decreased rotation in the left upper extremity, pain in the neck with flexion, a slightly decreased grip in the left hand, and tenderness along the left upper trapezius, rhomboids, and paraspinals. (ECF No. 11-1, pp. 297-298). When trigger point injections and physical therapy were unsuccessful, orthopedic surgeon Dr. Russell Allison performed a C5-6 level diskectomy with anterior cervical fusion. (*Id*. at 287-288, 296-298). Thereafter, Dr. Allison's physician's assistant, Tara Rogers, noted mild weakness with right thumb and wrist extension and weakness in the biceps. (*Id*. at 299-301).

An MRI of her right shoulder in December 2017 revealed acromioclavicular ("AC") joint arthrosis with impingement upon the supraspinatus tendon and subacromial osteophytes. (ECF No. 11-1, p. 289). Dr. Allison performed a right shoulder diagnostic arthroscopy with extensive debridement of the glenohumeral joint, decompression, and a distal clavicle resection. (*Id*. at 290-291). Unfortunately, she continued to experience discomfort with overhead activities. (*Id*. at 317).

In May 2019, the Plaintiff reinjured her right arm when she was kicked by a cow, falling on her right arm. (ECF No. 11-1, pp. 318-319). PA Rogers noted increased muscle tone in the upper trapezius of the right shoulder with mild swelling in the anterior shoulder and supraclavicular region; tenderness anteriorly; a positive Hawkins (pain with internal rotation) test; and a positive impingement sign (pain when arm extended above head) at 90 degrees. She

prescribed steroid injections, a Medrol Dosepak, Naproxen, Gabapentin, and Tramadol. (*Id*. at 318-323). MRIs of her right shoulder and cervical spine revealed a tiny amount of bone marrow edema in the subchondral humeral head of the shoulder which could represent a tiny bone contusion and a bulging disk at the C6-7 level. (*Id*. at 324-326). Therefore, in June 2019, neurosurgeon Phillip Porcelli performed an anterior diskectomy and fusion at the C6-7 level with removal of the herniated disk, decompression of the neural elements with bilateral foraminotomies, arthrodesis and placement of an allograft with plate and screws, and removal of the previous plate at the C5-6 level. (ECF No. 11, pp. 21-24, 28-87, 94-96).

Plaintiff presented to orthopedist Dr. Brent Lawrence in November 2019, with complaints of left shoulder pain worsened by movements such as reaching up and away from her body. (ECF No. 11-1, pp. 102-103). An exam revealed tenderness along the anterior acromion, decreased external rotation, pain with resisted external rotation, and a positive Hawkins test. An MRI of the left shoulder showed marked osteoarthritic changes and mild tendinosis of the supraspinatus. (*Id*. 104, 109). On December 18, Dr. Allison performed left shoulder arthroscopy with extensive debridement of the glenohumeral joint, subacromial decompression, and a distal clavicle resection. (*Id*. at 113-117, 121-125, 422-423, 429-433). She participated in physical therapy from December 23, 2019, through February 20, 2020, but the pain persisted. (*Id*. at 144-171).

In May 2020, the Plaintiff returned to Dr. Thomas with progressively worsening right upper extremity pain radiating from her neck down the right shoulder, back of arm and forearm, and into her fingers and tingling and numbness in both hands. (ECF No. 11-1, pp. 190-191). Nerve conduction studies showed mild bilateral CTS and an MRI of her cervical spine revealed both postoperative and degenerative changes. (*Id*. at 183, 203-209).

Although the Plaintiff underwent CT release in July and October 2020 (ECF No. 11-1, pp. 211-212, 219, 224-233, 236-277, 283-284), her symptoms persisted, prompting neurosurgeon Dr. Brad Thomas to ponder the possibility that some of her symptoms were related to her cervical impairment. (*Id*. at 196-198, 220-221). Meanwhile, her symptoms persisted.

In November 2020, the Plaintiff reported an inability to dress herself and raise her arms above her head. (ECF No. 11, pp. 417-421). Dr. Allison noted generalized sensory changes in her hands and pain reproduction when pressing her scalene muscle in the neck. Due to her history of cervical diskectomy and fusion at the C5, C6, and C7 levels, the doctor opined that he had no viable treatment options for her and urged her to consider applying for disability.

In a medical source statement, Dr. Allison indicated that the Plaintiff has significant limitations in her ability to reach, push, and pull with both upper extremities, and to handle and work with small objects with her hands. (ECF No. 11-1, pp. 327-331). He also indicated that she could only perform part-time work for no more than 10 hours per week.

The following month, Plaintiff saw nurse practitioner Jennifer Harris for complaints of depression associated with her worsening neck/joint pain and limitations. (ECF No. 11-1, pp. 350-351. 456-457).

Ultimately, cervical epidural steroid injections ("CESIs") and physical therapy were unsuccessful. (ECF No. 11-1, pp. 199-200, 396-401). And, in April 2021, she advised Nurse Harris and nurse practitioner Tammy Lusk that she could no longer drive because of the position it "puts her hands in." (*Id*. at 341-345, 410-412, 447-451). The Plaintiff explained that her wrists would lock up if they remained in one position for a long period of time. A physical exam revealed joint tenderness with muscle tenderness in the upper back, shoulders, and hands. (*Id*. at 410-412). Nurse Harris also noted that the Plaintiff had been diagnosed with De Quervain's synovitis, which

is swelling of the tendons that run along the thumb side of the wrist. *See* American Academy of Orthopaedic Surgeons, *De Quervain's Tenosynovitis*, *at* https://orthoinfo.aaos.org/en/diseases-conditions/de-quervains-tendinosis/ (last accessed September 20, 2023).

An MRI of her cervical spine conducted in April 2021 documented multi-level disk dessication and disk height loss; a small central disk herniation at the C2-3 level, with degenerative joint findings; mild diffuse disk osteophytic ridging, mild central canal stenosis, and mild bilateral neural foraminal narrowing at the C3-4 level; diffuse disk osteophytic ridging, degenerative joint findings, and mild bilateral neural foraminal narrowing at the C4-5 and C5-6 levels; diffuse disk osteophytic ridging, central disk herniation, degenerative joint findings, mild central canal stenosis, mild bilateral neural foraminal narrowing, and a small nerve root cyst on the left at the C6-7 level; and a nerve root sleeve cyst on the right, with degenerative joint findings at the C7-T1 level. (ECF No. 11-1, p. 385). After noting decreased strength in her deltoids, biceps, and triceps in May 2021, Dr. Thomas recommended a posterior right sided foraminotomy at the C6-7 level. (*Id*. at 403-406). A foraminotomy enlarges the area around a bone in the spinal column to relieve pressure on the compressed nerves. *See* John's Hopkins Medicine, *Foraminotomy*, *at* https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/foraminotomy#:~:text=What%20is%20a%20foraminotomy%3F,chain%20of %20bones%20called%20vertebrae (last accessed September 20, 2023).

Later that month, lab values revealed an elevated rheumatoid factor, prompting Nurse Lusk to refer her to a rheumatologist. (ECF No. 11-1, pp. 413-415, 444-446, 463-464).

After thoroughly reviewing this evidence, the undersigned is of the opinion that the RFC restriction to sedentary work with occasional overhead reaching fails to account for all the limitations resulting from the Plaintiff's neck, shoulder, and hand impairments. The evidence

clearly supports restrictions in reaching (in all directions), pushing, pulling, and handling, as well as positional limitations that could significantly erode the sedentary occupational base. *See* SSR 96-9P, 1996 WL 374185 (indicating that handling restrictions could significantly erode sedentary occupational base).

Accordingly, remand is necessary to allow the ALJ to reconsider the Plaintiff's RFC. In so doing, he is directed to obtain a consultative orthopedic or neurological examination, complete with a thorough RFC assessment, to determine the Plaintiff's ability to use her upper extremities to perform work-related tasks.

## IV. Conclusion

Based on the foregoing, it is recommended that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of September 2023.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE